# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2229
_____

Midwest Division - LSH, LLC, doing business as Lee's Summit Medical Center

*Plaintiff - Appellant*

v.

Nurses United For Improved Patient Care, CNA/NNOC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 14, 2013
Filed: July 2, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Lee's Summit Medical Center ("the Hospital") terminated registered nurse Gwynn Pirnie after receiving a complaint that she did not give prompt attention to a person seeking emergency room care. Nurses United for Improved Patient Care ("the Union") filed a grievance on Pirnie's behalf under its collective bargaining agreement with the Hospital (the "CBA"), alleging the Hospital lacked "just cause" to terminate. Unable to resolve the grievance, the Hospital and Union submitted the following

issues for binding arbitration under Article 10 of the CBA: "whether [the Hospital] had just cause to terminate [Pirnie]? If not, what shall the remedy be?" Nearly one year after Pirnie's discharge, and two weeks before the arbitration hearing, the National Labor Relations Board ("NLRB") decertified the Union after it disclaimed interest in continuing to represent Pirnie's bargaining unit. The parties nonetheless proceeded with the hearing, stipulating that the matter was properly before the arbitrator for decision.

Following the hearing, the arbitrator issued his final decision, concluding the Hospital lacked just cause to terminate and ordering that Pirnie be reinstated with back-pay from the date of termination to the date of reinstatement. The Hospital filed this declaratory judgment action under Section 301(c) of the Labor Management Relations Act, 29 U.S.C. § 185(c), seeking to vacate the arbitration award to the extent it ordered reinstatement and back-pay beyond the Union's decertification. The Hospital appeals the district court's[1] grant of summary judgment confirming the arbitration award. Applying the limited standard of review governing suits to vacate labor arbitration awards, we affirm. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) ("as long as the arbitrator is even arguably construing or applying the [CBA] and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision").

1. Because the merits of an arbitrator's decision are virtually unreviewable in an action to vacate his award, the Hospital argues only that the arbitrator *exceeded his authority* by ordering a remedy that extended beyond the date of the Union's decertification. An arbitrator's authority derives from and is limited by the CBA. "His task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties." Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 744 (1981), citing Alexander v. Gardner-Denver Co.,

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

415 U.S. 36, 53 (1974). Beyond question, an arbitrator may award reinstatement and back-pay that includes a period after the governing CBA expired, so long as the arbitrator in fashioning this remedy was interpreting and applying the CBA, and not simply "dispens[ing] his own brand of industrial justice." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960); see Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters, 56 F.3d 1132, 1136-37 (9th Cir. 1995).

In this case, the CBA expressly authorized arbitration of "matters which arose prior to the time of expiration of the Agreement," such as Pirnie's termination. Article 10, Section 6.D. Consistent with this provision, the arbitrator conducted an evidentiary hearing and authored a fifty-page opinion, concluding, "Just cause for discipline is a contract right that . . . survived the NLRB order." The CBA expressly granted authority to make that decision. Moreover, the parties submitted the dispute for final determination by the arbitrator *after* the Union was decertified, stipulating that the issues to be resolved were whether the Hospital had just cause to terminate, and if not, *what the appropriate remedy would be.* "[W]e will not give credence to [the Hospital's] argument that the arbitrator had no authority to decide an issue it agreed to submit." Homestake Mining Co. v. United Steelworkers, 153 F.3d 678, 680 (8th Cir. 1998) (quotations omitted). And when the parties stipulated that the issues submitted to an arbitrator included, "what shall the remedy be," the Hospital can hardly argue that the arbitrator "acted outside his authority" in fashioning a remedy, unless that remedy was expressly prohibited by the CBA. Amalgamated Transit Union Local No. 1498 v. Jefferson Partners, 229 F.3d 1198, 1200-01 (8th Cir. 2000).

Of course, an arbitrator may not ignore persuasive evidence that a particular remedy was considered and "explicitly rejected" in negotiating the CBA. See Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union Local 1B, 164 F.3d 427, 430 (8th Cir.), cert. denied, 528 U.S. 821 (1999). But reinstatement and back-pay are universally accepted labor arbitration remedies; therefore, limitations on this remedial power will not be lightly implied. "When an arbitrator is commissioned to interpret

and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies." Enterprise Wheel, 363 U.S. at 597. As the Ninth Circuit explained in ILWU Local 142 v. Land & Construction Co., 498 F.2d 201, 204 (9th Cir. 1974), when there is no provision in the CBA limiting back-pay to a period ending with its expiration, "[i]t follows that the arbitrator was faithful to the [CBA] in holding that its termination neither ousted him of jurisdiction to arbitrate nor limited back pay to that accruable to the date of termination."

2. The Hospital argues that these general principles do not apply because the CBA did not simply expire, it was "voided" when the NLRB decertified the Union. We reject this contention. The Hospital cites no NLRB decisions or rulings giving this effect to decertification, and we are confident the Board did not intend that its decertification would nullify grievance and arbitration proceedings pending under the Union's CBA. Cf. Union Switch & Signal, 316 N.L.R.B. 1025, 1036 (1995). In our view, so long as the governing CBA authorizes -- in other words, does not prohibit -- post-expiration remedies for pre-expiration grievances, the manner in which the CBA expires has no effect on the arbitrator's *authority*.

3. In arguing that the arbitrator exceeded his authority, the Hospital relies on Second and Fifth Circuit cases in which collective bargaining agreements expired after arbitrators had ordered reinstatement and back-pay. Emphasizing that the arbitrators had no opportunity to consider this relevant change in circumstances, the courts limited the arbitrators' back-pay remedy to the date of expiration. See Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 45-46 (2d Cir. 1985); Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus. Chem. & Energy Workers Int'l Union Local 4-487, 338 F.3d 440, 441-42 (5th Cir.), amending 328 F.3d 818 (5th Cir. 2003). Those decisions did not question the arbitrators' authority to make the awards being reviewed. They simply limited judicial enforcement of the arbitrators' remedies based upon post-arbitration circumstances,

decisions reflecting the equitable principle "that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." Sys. Fed'n No. 91 v. Wright, 364 U.S. 642, 647 (1961). Here, the circumstances of the Union's decertification and the CBA's expiration were known to, and expressly considered by the arbitrator in making his award.

4. The Hospital further argues that Pirnie lost all CBA job protections following the Union's decertification. Therefore, as an at-will employee, Pirnie may not be reinstated and awarded back-pay after decertification because that would put her in a position superior to others in the bargaining unit. Of course, this is an attack on the fairness of the arbitrator's remedy, not on his authority. Moreover, it assumes evidence not in the record. The Hospital presented no evidence to the arbitrator regarding the practical effect of union decertification on members of the bargaining unit. For example, there was no evidence that, following the CBA's expiration, the Hospital unilaterally changed the terms and conditions of employment to an at-will relationship. Nor was there evidence that Pirnie would have been discharged on the day after expiration if the arbitration had proceeded more expeditiously and she had been reinstated before the CBA expired. It may be that an arbitrator would be "dispens[ing] his own brand of industrial justice" if he ignored such evidence, or evidence that the CBA expired because poor business conditions eliminated the job of a grievant seeking full reinstatement and back-pay, the fact situation in United Steelworkers v. Overly Mfg. Co., 438 F. Supp. 922, 927 (W.D. Pa. 1977). We express no view on those issues. Rather, we conclude that, on the record before the arbitrator in this case, there is simply no basis to conclude that the arbitrator's exercise of his remedial authority failed to "draw its essence" from the CBA. Enterprise Wheel, 363 U.S. at 597.

The judgment of the district court is affirmed.

_____

-5-